Rodney L. OVERSON, Plaintiff-Respondent,

v.

Sylvia E. OVERSON, Defendant-Appellant.

Court of Appeals

*No. 86–1919. Argued May 27, 1987.—Decided July 22, 1987.*

(Also reported in 412 N.W.2d 896. )

On behalf of the defendant-appellant there were briefs and oral argument by *Giulio Fornary* of Racine.

On behalf of the plaintiff-appellant the cause was submitted on the brief of *Constantine, Christensen, Krohn & Kerscher, S.C.* of Racine, with oral argument by *Thomas Krohn.*

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J.   Rodney and Sylvia Overson were married in 1950. Rodney left home and commenced

the divorce action in 1970. However, the divorce was not granted until 1981. Sylvia was awarded $1000 a month as maintenance. In the property division, Sylvia was awarded the homestead and $165,000 payable in eleven installments of $15,000. The case was appealed to this court, and on remand, the trial court was instructed to either award interest on the deferred property division installments, explain why interest was not awarded, or consider the effect of the nonpayment of interest on the present value of the award.[1] In addition, the trial court was instructed not to consider property as both a marital asset subject to division and as a factor in a party's future income for the purpose of determining the ability to pay maintenance.

On remand, after further hearing, the trial court denied interest, stating numerous reasons. The trial court also retroactively reduced the maintenance award to $600 per month and denied Sylvia's request to place liens upon real estate owned by Rodney. Sylvia had requested the liens to secure her interest in the property division ordered by the court.

On appeal, Sylvia contends that the trial court's denial of interest on the property division installments and its refusal to impose a lien upon Rodney's real estate constitute an abuse of discretion. She also contends that the trial court erred in setting the amount of maintenance and in entering a retroactive order which resulted in a maintenance overpayment of $9600. We reject her contentions and affirm the trial court.

[1] *See Overson v. Overson,* 125 Wis. 2d 13, 370 N.W.2d 796 (Ct. App. 1985).

■ Generally, a property division upon divorce is within the sound discretion of the trial court. *Torgerson v. Torgerson,* 128 Wis. 2d 465, 468, 383 N.W.2d 506, 508 (Ct. App. 1986). Likewise, whether to allow interest on the balance due in a property division payable in installments is within the discretion of the trial court. *Corliss v. Corliss,* 107 Wis. 2d 338, 347, 320 N.W.2d 219, 223 (Ct. App. 1982).

The trial court denied interest on the balance due on the property division, stating a number of reasons. First, Sylvia's attorney did not request interest on the unpaid installments. Second, there was a tremendous acquisition and appreciation of assets from the time of separation in 1970 to the time of divorce in 1981. This increase was brought about solely by Rodney's business acumen. While the Oversons were technically married during the eleven-year period between the separation and the divorce, it was a marriage in name only. Because of the unusual living situation, the marriage could hardly be considered a "joint enterprise." What Sylvia did contribute to the marital estate was already noted in the original divorce judgment. Also, the annual payments to Sylvia are in a liquid form, clearly an advantage when the bulk of the marital estate was in the form of real estate holdings.

■ Finally, and most compelling, when the trial court ordered periodic payments, it was operating upon the presumption that the installment payments would be taxable to Sylvia and deductible by Rodney. The belief by the trial court that there were favorable tax consequences to Rodney was a major factor in influencing the court's decision to award installment

payments. At the hearing on the remand, it was undisputed that the $15,000 annual payments are, in fact, not deductible. Since the trial court's misconception was clearly to Sylvia's benefit, the trial court concluded it should not give her an additional benefit by ordering interest on the annual payments of the property division. The trial court carefully weighed the benefits and disadvantages to both parties when denying interest on the periodic payments. We find no abuse of discretion.

■

Sylvia also contends that the trial court abused its discretion by failing to impose a lien upon the real estate awarded to Rodney as security for the remaining installment payments. A discretionary order, such as the one here, will be affirmed if there is any reasonable basis for it. *See Asbeck v. Asbeck,* 116 Wis. 2d 289, 295, 342 N.W.2d 750, 753 (Ct. App. 1983). The trial court denied Sylvia's request, stating that adequate remedies exist for enforcement including contempt, and, in case of death, a claim against Rodney's estate. The entire history of this case indicates that Rodney has faithfully paid all sums required. We conclude that there was no abuse of discretion.

Sylvia next argues that the reduction of maintenance from $1000 per month to $600 per month was an abuse of discretion. The trial court maintains broad discretion in determining maintenance awards. *Vander Perren v. Vander Perren,* 105 Wis. 2d 219, 226–27, 313 N.W.2d 813, 817 (1982). In light of the instruction not to consider real estate awarded in the property division as both an asset and future income, the trial court analyzed the situation anew.

By removing from Rodney's income any consideration of gains based upon real estate sales, the trial court noted that Rodney's ability to pay maintenance was drastically reduced. Also, because of the fact that Sylvia does not have an income tax liability on the installment payments of the property division, the trial court recognized that she is receiving a significantly greater net property award than originally contemplated. Having considered those factors, the trial court did not abuse its discretion when it reduced Sylvia's maintenance to $600 a month.

Sylvia also contends that the trial court has no authority to make the reduction in maintenance retroactive by issuing a *nunc pro tunc* order.

> *Nunc pro tunc* entry is an entry made now of something actually previously done, to have the effect of the former date. Its office is not to supply omitted action, but to rectify an inadvertent or mistaken omission in the record of an action actually taken. A court's *nunc pro tunc* authority is limited to rectifying what might be termed mechanical errors; it is appropriately exercised to conform an order or judgment to that actually pronounced.

*Schmorrow v. Sentry Ins. Co.,* 138 Wis. 2d 31, 36–37, 405 N.W.2d 672, 675 (Ct. App. 1987) (citations omitted).

Here, there was not a mechanical error in the judgment which resulted in setting maintenance at $1000 per month when the trial court had intended it to be set at $600 per month. Therefore, a *nunc pro tunc* order was not appropriate. While we conclude that to

refer to the order as a *nunc pro tunc* order is inappropriate in this case, we are satisfied that it was not error for the trial court to make its order on maintenance retroactive to the date of the original judgment.

Generally, trial courts in Wisconsin cannot direct the retroactive increase of support payments. *See Strawser v. Strawser,* 126 Wis. 2d 485, 489, 377 N.W.2d 196, 198 (Ct. App. 1985) (citing *Foregger v. Foregger,* 40 Wis. 2d 632, 645, 162 N.W.2d 553, 559 (1968)). However, we conclude that in cases which have been timely appealed, upon remand the trial court may, in its discretion, retroactively adjust any portions of the original judgment which are covered by the remand.

We so hold because to do otherwise would unnecessarily bind a trial court's hands on remand. If an appellate court points out a trial court's error and remands the case to enable the error to be corrected, yet forecloses upon the very method by which the error can be corrected, an unreasonable and untenable situation is created. We also consider the fact that the law is presently unclear concerning a trial court's authority to make modifications in orders for support while the case is on appeal and the fact that the record is with the appellate court. A rule prohibiting a trial court from considering the effect of the original erroneous order on payments made during the period of time that the case is on appeal would work an unnecessary hardship on the party who prevailed on appeal.

Sylvia next argues that the method used by the trial court to make the adjustment was improper. We disagree. In *Foregger,* the supreme court briefly analyzed a trial court's ability to grant retroactive relief. In doing so, the court relied upon *Chandler v. Chan-*

*dler,* 25 Wis. 2d 587, 131 N.W.2d 336 (1964), to support the premise that "the circuit court would have the power to grant retroactive relief by reducing future support payments until the amount of any overpayments ... had been recouped." *Foregger,* 40 Wis. 2d at 645, 162 N.W.2d at 559 (quoting *Chandler,* 25 Wis. 2d at 593, 131 N.W.2d at 339).

*Chandler* suggested one method by which the adjustment could take place. Another method was suggested at oral arguments[2] and still a third method

---

[2]At oral arguments, the following methodology was suggested:

(1) Determine what the payor's ability to pay and the payee's need was at the time of the trial court's first decision and then compute what maintenance should have been (had the trial court not been in error).

(2) Determine the payor's ability and the payee's need for the period between the trial court's first decision and the trial court's decision after the remand and compute what maintenance should have been paid.

(3) Determine payor's ability and payee's need at the time of the hearing on remand and compute what maintenance should be now.

(4) Compare what was paid during the entire period to what should have been paid. If the comparison gives a difference, then look at what tax implication each party had in terms of tax benefit or tax loss compared to what they would have been had the new order been in effect for the entire period.

(5) Take the plus or minus difference between what was paid and what should have been paid, along with the concomitant tax implications and adjust the difference between the parties as necessary.

We recognize that this method is well-thought and comprehensive. However, we will not require this method to be used. We also recognize that there may be cases where any kind of adjustment may not be practical. We leave such decisions to the trial court's discretion.

was utilized by the parties in this case.[3] We conclude that the method by which the adjustment takes place is properly left to the discretion of the trial court depending on the facts of each case.

Sylvia raises several additional issues in regard to the computation of maintenance. She asks that depreciation taken upon real estate for tax purposes be added back into Rodney's income when determining his ability to pay. She contends that depreciation is merely a bookkeeping device and there has been no actual cash loss to Rodney. We conclude that such an inclusion is discretionary depending upon the facts of the case. It is Sylvia's burden to prove that the tax deduction was only a paper transaction. We conclude that the trial court did not abuse its discretion by excluding the depreciation deduction, taking special note of the fact that the trial court was reluctant to give Sylvia any additional benefit given the very favorable property division she received.

Sylvia also asks that interest deductions taken by Rodney on real estate mortgages from his business be added back when calculating Rodney's ability to pay. We decline to do so. We conclude that whether interest is to be included is also discretionary with the trial court. The interest here was actually paid. It was a legitimate expense for Rodney, reducing his disposable income. Therefore, the interest deductions are legitimate and should not be added back.

---

[3]The parties have stipulated that they will eliminate the $9600 overpayment by deducting $5000 from the annual payment of the property settlement due one year and deducting the remainder the following year.

Sylvia also asked to introduce evidence at the hearing on remand showing large expenditures made to repair her home and evidence of other necessary repairs not yet done on the home to show an increased need for maintenance. The trial court excluded the evidence, stating that the needed repairs had been considered when fixing the value of the home at the time of the original property division. As such, it was immaterial to the determination of maintenance. Evidentiary rulings as to relevance are left to the discretion of the trial court and will be accepted unless there is an abuse of discretion. *Keithley v. Keithley,* 95 Wis. 2d 136, 140, 289 N.W.2d 368, 371 (Ct. App. 1980). The court's reasoning supports its decision. Therefore, we find no abuse of discretion.

We affirm the order of the trial court.

*By the Court.*—Order affirmed.